UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JAMES MILLER,

       Plaintiff,                          No. 18-11284

v.                                       District Judge Laurie J. Michelson
                                         Magistrate Judge R. Steven Whalen

LINCOLN PARK POLICE DEPT.,
ET AL.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Charles James Miller is a prison inmate in the custody of the Federal Bureau of Prisons at the Federal Prison Camp in Tucson, Arizona. On April 24, 2018, he filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging that the Defendants violated his rights under the Fourth Amendment during the execution of a search warrant. Before the Court is Defendants' motion to dismiss [Doc. #15], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED and that Plaintiff's complaint be DISMISSED WITH PREJUDICE.

**I.   FACTS**

Plaintiff alleges that on October 2, 2013, Defendant Ronald Wise, a detective with the Lincoln Park, Michigan Police Department, along with other officers, executed "an otherwise valid warrant to search for narcotics and weapons" at his home. *Complaint*

[Doc. #1], Pg. ID 3.[1]  He alleges that although the particularized scope of the warrant was limited to drugs, drug paraphernalia, and weapons, the officers exceeded that scope by seizing a digital camera, electronics, and other items listed in Appendix A of his complaint. *Id.*[2]  He states that "[t]he items seized did not have an apparent criminal character, nor could the said items be linked to any criminal activity at the time of the seizure." *Id*.  He bases his § 1983 claim on an alleged Fourth Amendment violation.

Plaintiff states that he filed a habeas motion[3] challenging the seizure of his property, and that his final federal appeal of that action was denied on January 7, 2018. *Id*.  He seeks the alleged value of the property ($24,290) plus $500,000 in punitive damages. *Id*. Pg. ID 3-4.

Based on images that the officers observed in the camera, two additional state search warrants and a federal search warrant were issued and executed. Plaintiff was then charged federally with production and possession of child pornography, possession with intent to distribute controlled substances, possession of firearms in furtherance of a drug trafficking offense, and felon in possession of a firearm. *United States v. Charles Miller*, E.D. Mich. No. 13-20928 ("the criminal case").  In the course of the criminal case, Plaintiff filed a motion to suppress based on the argument that the initial search–which is the subject of the present civil case–exceeded the permissible scope of the search warrant. *Criminal Case*, Doc. #16.  On July 23, 2014, the Honorable Robert H. Cleland denied the

---

[1] The affidavit in support of the search warrant is contained in Appendix B of the complaint.

[2] The items seized include four laptop computers, an external hard drive, and camera. *Id*. Pg. ID 6.

[3] Plaintiff refers to a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

motion to suppress in a written opinion and order. *Id*. Doc. #26.

Facts alleged in the motion to suppress, and Judge Cleland's opinion denying the motion, show that during the initial search, Detective Wise briefly examined a digital camera that was found in a so-called "control room" among drugs, scales, and a loaded gun. He found an image consistent with child pornography, and immediately turned off the camera. *Id*. Doc. #26, Pg. ID 247. Judge Cleland found that viewing the contents of the camera fell within the scope of the search warrant:

> "Given the proximity of the camera to evidence of illicit activity, it was objectively reasonable for an officer in that position to believe that a digital camera might be related to or contain a record of the kind of activity that prompted the search warrant. Additionally, as the government proffers and the Defendant does not meaningfully controvert, law enforcement officers commonly know that drug traffickers take photographs of themselves with their drugs, money, and firearms." *Id*., Doc. #26, Pg. ID 250 (citing *United States v. Lucas*, 540 F.3d 168, 177 (6th Cir. 2011)).

Based on what Detective Wise observed on the digital camera, the additional search warrants were issued, and the other items that Plaintiff lists in Appendix A of his complaint, including the computer equipment, were examined pursuant to those subsequent warrants.[4]

In the criminal case, Plaintiff pled guilty to one count of production and one count of possession of child pornography. His Rule 11 plea agreement contained a appeal

---

[4] Judge Cleland also denied Plaintiff's motion for reconsideration in a written opinion, *Id*. Doc. #37. The opinion reiterates that, as related to the Plaintiff's present claims, the initial search was limited to the digital camera:

> "Defendant does not argue that police officer accessed or searched the Sony laptop on the day of the search. Rather, during the initial search, an officer turned on the Coolpix camera and clicked through a number of pictures before discovering photographs of child pornography....[T]he officer ceased his examination of the camera at this point, and later obtained a warrant to search for evidence of child pornography production and possession." *Id*. Pg. ID 373.

waiver provision. *Id*. Doc. #49. On August 2, 2016, Plaintiff filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, claiming ineffective assistance of counsel related to his lawyer's handling of the motion to suppress. *Id*. Doc. #77. On March 31, 2017, Judge Cleland denied the motion, holding that "[f]or the same reasons articulated in this court's earlier opinions, those actions [related to the search] were not unconstitutional." *Id*. Pg. ID 773. Subsequent appeals to the Sixth Circuit and the Supreme Court were denied.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III.  DISCUSSION

This case stands or falls on the viability of Plaintiff's Fourth Amendment claim. The Defendants raise a number of issues, but two procedural issues in particular are sufficient to defeat Plaintiff's claim. First, the claim is barred by the three-year statute of limitations that applies to § 1983. Second, the claim is precluded under the doctrine of collateral estoppel.[5]

### A.  Statute of Limitations

In § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985)). "[T]he appropriate statute of limitations to be borrowed for § 1983

---

[5] Because these two issues are clearly dispositive, it is not necessary to address Defendants' other arguments.

actions arising in Michigan is the state's three-year limitations period for personal injury claims." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005)(citing M.C.L. § 600.5805(10)).

However, while the statute of limitations is determined by state law, the date of accrual of a § 1983 action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[T]he statute of limitations for filing an action alleging an unconstitutional search and seizure begins to run at the time of the injury—when the plaintiff knows or has reason to know about the occurrence of the unconstitutional search." *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir.1999), overruled on other grounds by *Wallace,* 549 U.S. at 392–94 (2007). *See also Harper v. Jackson*, 293 F. App'x 389, 392, fn. 1 (6th Cir. 2008)(Fourth Amendment claim accrues on the date of the alleged illegal search and seizure); *Gilbert v. Schuette*, 2014 WL 2208089, at *2 (E.D. Mich. 2014)(same). In this case, the Plaintiff's claim accrued on October 2, 2013, the date of the initial search by the Lincoln Park police. Plaintiff filed his complaint on April 24, 2018, well beyond the three-year statute of limitations.

Plaintiff argues that the statute of limitations on his claim was tolled during the pendency of his post-judgment motion under 28 U.S.C. § 2255, and did not accrue until the Supreme Court's denial of certiorari. In support he cites *Wallace v. Kato* for the proposition that accrual generally occurs when a plaintiff has a "complete and present cause of action." However, *Wallace* defeats, not supports his claim. Discussing the impact of *Heck v. Humphrey*, 512 U.S. 477 (1994),[6] on pre-conviction events, *Wallace*

---

[6] *Heck* holds that a plaintiff may not recover under § 1983 for an action that would call into question the validity of a conviction unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487.

held that tolling under *Heck* is not available when the cause of action accrues before the existence of a related criminal conviction. *Wallace,* 549 U.S. at 393–95. *See also Harper v. Jackson*, 293 F. App'x 389, 392, fn. 1 (*"Wallace* also clarified that *Heck* does not delay the accrual of an otherwise complete and present cause of action when a judgment in the plaintiff's favor 'would impugn an anticipated future conviction.' ")(quoting *Wallace* at 393). Indeed, *Wallace* characterized the theory of a delayed accrual based on an anticipated future conviction as a "bizarre extension of *Heck*." *Wallace* at 393.

*Wallace* also explained that when a conviction does occur after the accrual of a Fourth Amendment claim, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. at 393-94. Then, "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id*. at 394. As applied to this case, the Plaintiff's cause of action accrued on October 2, 2013. The three-year statute of limitations was not tolled when he was convicted, nor was it tolled while he pursued post-conviction remedies under § 2255. Obviously, there was no timely filed civil suit to stay during the limitations period, because the complaint was not filed until more than two years after that period expired.

Plaintiff also contends that he is entitled to equitable tolling of the statute of limitations because prison officers interfered with his ability to prepare and pursue this action. As the Supreme Court stated in *Wallace*, 549 U.S. at 396, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Plaintiff's generalized and conclusory allegations of interference by prison officials are insufficient to support his claim of equitable tolling. First, his claim

accrued on October 3, 2013. He was not sentenced until August 11, 2015, and was thus not in the custody of the Bureau of Prisons for that almost two-year period. In addition, he was able to actively pursue his § 2255 motion in this Court and in the Sixth Circuit, and to file a petition for writ of certiorari in the Supreme Court during the time he was incarcerated. His vigorous self-representation in the criminal case–which involved the same Fourth Amendment issue underlying the present case–belies his assertion that he was in any way stymied in filing a civil complaint under § 1983.

This complaint must therefore be dismissed as time-barred.

### B. Collateral Estoppel

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979)(citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)). Application of collateral estoppel is determined with reference to four factors: (1) the precise issue has been raised and actually litigated in the prior proceedings, (2) the determination of the issue must have been necessary to the outcome of the prior proceedings, (3) the prior proceedings must have resulted in a final judgment on the merits, and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Meeks v. Larsen*, 999 F. Supp. 2d 968, 977 (E.D. Mich. 2014), aff'd, 611 F. App'x 277 (6th Cir. 2015)(citing *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 590 (6th Cir.2009)).[7] Collateral

---

[7] The Michigan test for collateral estoppel is analogous, bringing into play three factors: (1) the second action involves the same ultimate issues as the first, (2) the second action involves the same parties to the first action or their privies, and (3) and the parties have had a full opportunity to litigate the issues in the first action. *Knoblauch v. Kenyon*, 163 Mich.App. 712, 415 N.W.2d 286, 287 (Mich.Ct.App.1987). "The Full Faith and

estoppel can be applied to preclude re-litigation of a Fourth Amendment issue in a § 1983 case when that issue was decided in an earlier criminal proceeding. *See Carlton v. Pytell*, 986 F.2d 1421 (6th Cir.1993)("[A] claim in a section 1983 suit may be subject to the preclusive effect of collateral estoppel when a motion to suppress the evidence based on a Fourth Amendment challenge was denied in the state criminal proceeding ....").

All four factors are met in this case. The Fourth Amendment issue in the present case is factually and legally the same as the issue raised in the unsuccessful motion to suppress in the criminal case; the determination of the search and seizure issue was critical to the outcome of the criminal case, in that conviction necessarily depended on the seized evidence; a final judgment of sentence was entered against Plaintiff in the criminal case, following his plea and sentencing; and the Plaintiff, who was represented by competent counsel in the criminal proceeding, had a full and fair opportunity to litigate the issue, and in fact did so through a fully briefed motion to suppress, an evidentiary hearing, and a motion for reconsideration in the trial court, followed by a post-conviction § 2255 motion, which Plaintiff pursued through the Supreme Court's denial of certiorari.

*Kircher v. City of Ypsilanti* is on point with the present case. There the Court addressed the preclusive effect of a state criminal court's denial of a motion to suppress on a subsequent § 1983 case arising out of the same search and seizure:

> "The Court finds that the elements of collateral estoppel are satisfied in this case. The parties and issues are identical and Kircher had a full and fair opportunity to litigate this issue in his criminal proceeding. The legality of the search is the precise issue Kircher alleges as part of his Fourth

---

Credit Act, 28 U.S.C. § 1738, requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so.' " *Kircher v. City of Ypsilanti*, 2007 WL 1343705, at *3 (E.D. Mich. May 8, 2007)(quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). "Michigan relaxes the mutuality requirement when the first suit is a criminal matter and the second is a civil matter." *Id.* citing *Knoblauch,* 163 Mich.App. at 712.

Amendment claim in this case. Kircher's conviction was based in part on the evidence obtained from the search of the premises. Not only did Kircher have an opportunity to litigate the issue before the trial court, but he litigated it again on appeal. Thus, Kircher's Fourth Amendment claim is barred by the doctrine of collateral estoppel." *Id.*, 2007 WL 1343705, at *3 (citing *Haring v. Prosise*, 462 U.S. 306 (1983)).

Likewise in this case, collateral estoppel bars Plaintiff's Fourth Amendment claim.

### IV. CONCLUSION

I recommend that Defendants' motion to dismiss [Doc. #15] be GRANTED and that Plaintiff's complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: June 24, 2019

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on June 24, 2019, electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla
                                                Case Manager to the
                                                Honorable R. Steven Whalen